Your Honor, sir, good morning. My name is Jason Mudd. I'm here on behalf of Mr. Collins. Your Honor, during the expulsion inside the apartment, someone screamed out. It was not established, quote, immediately, to protect others. This was not as the standard. Your Honor, I did not mean to offend anyone. I did not mean to hurt anyone. I was just trying to make sure that the process was understood. I was just trying to make sure that the process was justified.  Obviously, at the start, the last thing we did, they said, Okay, your officer, Jason, is to allow us into your apartment. You don't notice that they are alone. They come and scream and say, Well, it was obviously that they knew it wasn't his or they, but they don't know that all of it's his or mine. You know, we have a reason that we want to make this easier for you, sir, to be able to get back to work as soon as possible. That's what it is. So, somebody inside yells out, That's strange. It's strange. It's strange. Okay, because here's the evidence that says the hearings will only have these three officers. Right. Nobody's involved with crime. Nobody's involved with violence. It's just the process. It's just the process. Okay. What happened if the officers walked away at the point where they answered that it wasn't his fault and said they murdered him? What if somebody said, What's going on, you people? You just basically got him off the streets and ran into an apartment? Somebody is. Somebody is. You get out. And you say, Well, I'm not going to do that. Question one, Sorry, it's a question from Alice Abagor. So, it's called running your pieces. If I'm wearing a bag and a shirt, you're saying that it's not me, and you're chasing someone? No. So, you have to judge for yourself. That's strange. You just chase somebody. You call an assistant. You just answer that they murdered him. That he didn't do his job. And you hear somebody say, You can't do that. And then, finally, I would just do a reasonable assessment. Really? Yeah. We have a couple of ways. One of them, I would just trust that you just are a serious person. Somebody else is going to say, You're being insulting. You're being rude. Well, then you get a rule of law that relates to the case. You become a student. That you just go right through, break down the door, go right into that apartment. Oh, no. I don't think so. I don't think somebody really has the authority to say that. So, it's the door. It's the door. I can't do this, because this is something that only I can do. Because I'm going to find the one that's sure of you. And because it's you. And the, um, as long as this person stays out, there's no danger. Instead, she's constantly assaulted. And it seems to me, that's not a good thing. Well, let me tell you what troubles me about this. So, to me, it doesn't matter. Okay, let's get this. I have a lot of difficulty with the police injury. The question is, how long does it take you to do things to one status? And you didn't. You didn't go here, to authority, to finding one status. Um, and, I could see, somebody say, what's your status? What's your status? What do you want to do? Are you in danger? What's what you want to do? No, that's what I will say to myself. I didn't raise that status. I didn't raise that status through, of course, the primary doctors. But, getting back to the crux of the court's argument, it's yelling, get out. What's the difference? Let's say, for example, in Snipes, there was a disturbing call, get the cops here. There was no yelling, help. There was no yelling, call the police. There was no yelling, change seats. There was no yelling, ask them, colleagues,  I think that's more than enough. Um, I'm talking to a guy here,  and that's another woman, and there's a misdemeanor matter, this is part of this, and this is increasingly, it makes sense. Because, I hear the first time you hear somebody breaking into a house, and you can make a call, and of course it has to be imminent, dangerous, safety, other people, other people. Help.  Police. Don't shoot. Challenges. Domestic dispute. Domestic, oral, and domestic. Well, that's, that's true. Yeah, I was, I was, it's not clear, how he, I'm sorry, it's not clear how he intercepted the police. In other words, there's no testimony from the officer that he's, he's got, no, no, he just runs, he runs in, opens the door, the front door is shut, behind him, it locks. So, this area was literally open, it was kind of an open, he runs in and it's locked behind him, and then, he does, he's got the wrist, he's got the shoulder, and the lower hand, he has, he has a ticket door, which is a main door, which of course you, in this case, were, were, were, were,  Close to this, were, were not bound to be secured. Close to this, were, were, were, were, were, were, were, were, were, and the, and the door was the cause was the cause of the recalculate repercussions srk Of sorts. Well, in court, it was, it not looked authentic. the officers wanted, at five p.m., they decided they were not going to ask the court to tell the officers to go up to the, the door without the doc, and the current, it's very nice and really safe function. You have the friction but, but it's not safe function. But what could, what would one of the roles of that procedure was there either in that case, that by the end, nobody expects so much from, from the court. At least, that's what I was told. But, for all of us, it's, you know, we're talking about the passage of time here. And what we just talked about is whether or not, and it screams, you know, I think it's absolutely very useful, so I'm going to say it again, it's a little embarrassing, but it's definitely one that you should be aware of. The passage, what I would know, you know, would never be available, is one that says, it's just my brain, so I'll take care of it. You know, I've been doing research, but I don't know how it works. So I'm talking about communities, not communities. I don't know if anybody sees that, but in this case, we're, how far back is it to see the cross, and, you know, how much research, you make the point, in terms of all the, all sorts of things, but frankly, it's, it's all the way here. And it doesn't seem like it. So, well, potentially, perhaps, perhaps we'll be in the, we'll understand more things, but that's what concerns me, that's why, essentially, we'll talk to, and, and, and I'll just stop there. But, it was, it was a good question. I do believe, that disability, is a very big, and I agree with you, the individual variables matter, but we're talking about, here's relatively small, a burden, and, a matter of, thinking about it, because, not, I would agree with you, if, for example, the interstate, a large multi-story resident, if they had a cognitively disabled mother, and she said, oh, you know, that sounds not a problem, and, oh, God, it's not a problem here, we're all fine, it's okay, it goes, yeah, it might be good, but, it's a big, large, and, it's a massive, and, it's a war, and, and, we might, well, that's really all I'm, pointing towards, which, I don't think, is a bad thing, you see, it's, it's all a history, that's occurred, and, there are studies, that we can, search for those who have been, developing an exercise, to research, zero-sum, and, it's probably, the next hope, to be able to do, is research, it just needs a measured, response, and, we certainly need the opportunities, that everybody wants to provide, but hey, it's probably our time! It's at, when, differingly compared,  with everything needs reason, and that's really all the education requires, but I think that's all the questions on the screen, so that's everything, it's all we need to do, and, I think it's reasonable, for one officer, to sit outside the door, and look at the other officer, and say, no, you shouldn't be in the door, it's too emergency, and, the ear strings, and, they don't hear the question, and, they just leave it open, so the fact, that the one officer, is talking to the other officer, and, sometimes, you should leave it open, but it's not, unless, it's open, and, you're walking, as soon as, you're talking with them, you, are, you, are,   go, OK, I'm sorry. They, say that you have a safe place, where you can sit, stand on the walk, and talk, and, so it requires, , and, you leave the mouth open, and they just follow, these walking, and, You can still talk, the cases, are, different, as well, as, well statements, are very clear, which are true, true from, the way, the circumstances, you need, in an emergency, and, all your entry, has to be reasonable, it can, front door, would be not, and that is not, a reasonable solution. If the door is not locked, and, open, and you walk in, would you have a conflict? Well, probably not, yes, again, it's been compromised, and four of us, have had this kind of, best of the times, so, but, it's not, a simple entry, into the home, just, a partner, suit, doctor, and, why, in a transit case, well, those offenses, are minor enough, that, the kind of partner, suit, you have, may just, when you enter the door, in the apartment, or home, would not be allowed, and,
judges: Tashima, Tallman, Hurwitz